**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CONDITIONED OCULAR ENHANCEMENT, INC. and FASTTRACK BASEBALL CORP., <br><br> Plaintiffs, <br><br> v. <br><br> MICHAEL BONAVENTURA, JILL BONAVENTURA, CRAIG HALLGREN, THOMAS DAVIDSON, and CHI-TOWN EXPRESS, <br><br> Defendants. | No. 05 C 2153 <br> Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

I.    BACKGROUND

This case arises out of Defendant Michael Bonaventura's assignment of United States Patent No. 6,447,408 (the "'408 Patent") to Plaintiff Conditioned Ocular Enhancement, Inc. ("COE"). Upon learning that Defendant Thomas Davidson ("Davidson") was providing vision training services that COE believed to be the patented Ocular Enhancement Training System, COE brought an action for infringement of the '408 Patent against Davidson.[1] In particular, COE alleges that Davidson was providing patented vision training services to Defendant Chi-Town Express. The complaint also alleges violations of the Lanham Act, 15 U.S.C. § 1125 (2000).[2] In response, Davidson filed several counterclaims. The first two counterclaims allege that the '408

---

[1] COE also claims that Defendants Michael Bonaventura and Chi-Town infringed the '408 Patent. Those allegations are irrelevant for purposes of this motion to dismiss Defendant Davidson's counterclaims.

[2] A more complete statement of the facts can be found in my March 27, 2006 Findings of Fact and Conclusions of Law.

Patent is invalid and unenforceable and that Davidson is a co-inventor and co-owner of the '408 Patent. COE previously filed a motion to dismiss these two counterclaims. At a hearing on October 18, 2005, I denied COE's motion to dismiss Counterclaims I and II. On November 30, 2005, Davidson added five additional counterclaims, each based on seven cease and desist letters (the "Letters") that COE sent to entities that Davidson claims are his current and prospective customers. COE's law firm sent the Letters between July 22, 2005, and August 15, 2005. The Letters identified COE as the owner of the '408 Patent, announced that Thomas Davidson did not have a license to use the patented system, informed the recipient of the pendency of a patent infringement lawsuit against Davidson, included a subpoena for documents relating to the suit, and directed the recipient to cease and desist all use and advertising of the COE system.

## II. PROCEDURAL POSTURE

Before me is COE's motion to dismiss Counterclaims III – VII for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). In addition, COE asks me to reconsider my October 18, 2005 ruling denying COE's motion to dismiss Counterclaims I and II.[3] That request is denied. "Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996). "Reconsideration is not an appropriate forum for rehashing previously rejected arguments." *Id.* at 1270. COE fails to offer any additional arguments in support of its challenges to Counterclaims I and II. Since COE's request for reconsideration amounts to nothing more than "rehashing previously rejected arguments," it is denied.

---

[3]The request was made via two footnotes – one in COE's August 17, 2006 motion to dismiss and the other in its reply in further support of its motion to dismiss.

In responding to COE's Motion to Dismiss, Davidson withdraws Counterclaim VII and narrows Counterclaim VI, his tortious interference with economic damage claim, to include only prospective economic advantage. Thus, Counterclaim VII and the portion of Counterclaim VI concerning tortious interference with *present* economic advantage are dismissed.

In addition to these changes, Davidson has submitted amendments to his other counterclaims. Davidson submits the Proposed Fifth Amended Counterclaims "for clarity purposes" and "in view of Plaintiffs' Motion to Dismiss." Thus, by Davidson's own admission, the newly-amended counterclaims are purposely responsive to, and appear tailored to address, COE's critiques.[4] Since the proposed amended counterclaims raise no fresh legal arguments, Davidson's request for leave to file his Proposed Fifth Amended Counterclaims is denied.

III. DISCUSSION

  A. *Standard of Review*

COE moves to dismiss Davidson's Fourth Amended Counterclaims pursuant to Fed. R. Civ. P. 12(b)(6). A motion to dismiss tests the sufficiency of a claim, not the merits of the case. *Autry v. Northwest Premium Servs., Inc.*, 144 F.3d 1037, 1039 (7th Cir. 1998). I should grant COE's motion only if Davidson cannot prove any set of facts in support of his counterclaims that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In reviewing COE's motion, I must construe all allegations in the counterclaims in the light most favorable to Davidson and accept all well-pleaded facts and allegations as true. *See Bontkowski v. First Nat'l*

---

[4] For example, Davidson responds to COE's critique of the "single, unwieldy, puzzle of a sentence" that is Counterclaim III of Davidson's Fourth Amended Counterclaims by removing several semicolons and forming new sentences, which are broken up into multiple paragraphs. More substantively, Davidson newly characterizes the Letters as "non-privileged," ostensibly in response to Plaintiffs' argument that the letters are privileged.

*Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993). I may only grant COE's motion if "no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

Initially, COE argues that Davidson's counterclaims should be dismissed because (1) as a patent holder, COE has the right to enforce the '408 Patent via cease and desist letters; (2) the Letters are protected by the absolute litigation privilege; and (3) they suffer from deficient pleading. In addition to these overarching reasons for dismissal, COE also attacks each counterclaim individually. I will address COE's broad arguments first, and then will turn to each of the counterclaim-specific arguments.

B. *COE's Right to Enforce its Patent*

COE first argues that as the holder of the '408 Patent, it is entitled to enforce its patent, and that therefore, the counterclaims – each of which is based solely upon the Letters – should be dismissed. The '408 Patent carries a presumption of validity. 35 U.S.C. § 282 (2000). As the holder of the '408 Patent, COE has the right to "enforce its patent, and that includes threatening alleged infringers with suit." *Concrete Unlimited, Inc., v. Cementcraft, Inc.*, 776 F.2d 1537, 1539 (Fed. Cir. 1985). If the patentee acts in bad faith, however, "the protection otherwise afforded by the patent laws to a patentee's conduct in enforcing its patent may be lost." *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1343 (Fed. Cir. 1999). Thus, a "trademark owner may not send infringement letters which contain false statements or which are issued in bad faith." *Heinz v. Frank Lloyd Wright Found.*, 762 F. Supp. 804, 807-08 (N.D. Ill. 1991).

COE's right to enforce the '408 Patent, therefore, extends only as long as the Letters were issued in good faith and did not contain false statements. Davidson's counterclaims allege that

4

the Letters were sent in bad faith. Accepting these bad faith claims as true – as I must in assessing this motion to dismiss – it is inappropriate to dismiss the counterclaims on the grounds that COE has an absolute right to protect its patent.

    C.    *Absolute Litigation Privilege*

COE also argues that counterclaims III through VI are barred, as the Letters fall within the absolute litigation privilege. There is a litigation privilege that protects "communications preliminary to a proposed judicial proceeding." Restatement (Second) of Torts § 586 (1977). Illinois has adopted this section of the Restatement. *Edelman, Combs & Latturner v. Hinshaw & Culbertson*, 788 N.E.2d 740, 748 (Ill. App. Ct. 2003).

While a litigation privilege does exist in Illinois, that privilege does not protect the Letters. First, a "state absolute litigation privilege purporting to confer immunity from suit cannot defeat a federal cause of action." *Steffes v. Stepan Co.*, 144 F.3d 1070, 1074 (7th Cir. 1998) (collecting cases). The litigation privilege therefore is no bar to Davidson's Lanham Act claims. Second – separate and apart from this limitation – Illinois law limits the scope of the privilege to defamation or false light actions. *See Zdeb v. Baxter Int'l, Inc.*, 697 N.E.2d 425, 430 (Ill. App. Ct. 1998) (noting that the Restatement is specifically entitled "Defamation: Defenses" and states only that it "protects the attorney from liability *in an action for defamation*") (emphasis in original); *see also Scheib v. Grant*, 22 F.3d 149, 156 (7th Cir. 1994) ("[I]n Illinois . . . anything said or written in a legal proceeding . . . is protected by an absolute privilege

5

against defamation actions.") (internal quotations omitted).[5] Dismissal based on the absolute litigation privilege is inappropriate.

    D.    *Deficient Pleading*

        1.    *Rule 8(a)*

COE argues that the Counterclaims fail to meet the pleading requirements set forth in Fed. R. Civ. P. 8(a). Under Rule 8, Davidson is required to provide COE with notice of his claims and the grounds upon which those claims rest. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993). Although Davidson's drafting is less than model, it is sufficient to meet the requirements set forth in Rule 8(a).

        2.    *Rule 9(b)*

Claims that allege false representation or false advertising under the Lanham Act are subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b). *MPC Containment Sys., Ltd. v. Moreland*, No. 05-C-6973, 2006 WL 2331148, at *2 (N.D. Ill. Aug. 10, 2006) (collecting cases); *Merix Pharm. Corp. v. GlaxoSmithKline Consumer Healthcare, L.P.*, No. 05-C-1403, 2006 WL 1843370, at *2 (N.D. Ill. Jun 28, 2006). While COE did not raise the issue of heightened pleading requirements in its motion, it is my prerogative to do so *sua sponte*. *See MPC Containment Sys.,* 2006 WL 2331148, at *2 n.1 (raising the application of Rule 9(b) *sua sponte*, "because specificity is required not only for adequate notice, but also in order for the

---

[5]Though the cases upon which COE relies – *Leegin Creative Leather Prods., Inc., v. M.M. Rogers & Co.*, No. 94-4644, 1994 WL 761725 (C.D. Cal. Oct. 24, 1994) and *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 335 F.3d 1161 (10th Cir. 2003) – do extend the litigation privilege to cease and desist letters, both are distinguishable. The *Leegin* court specifically relied on a California statute that is obviously inapplicable here. 1994 WL 761725, at *2. In *Cardtoons,* while the Tenth Circuit did hold that the litigation privilege applied to cease and desist letters, the litigation privilege was being applied to libel, which is not at issue here. 335 F.3d at 1166.

court to address the sufficiency of the claims that fall within the context of misrepresentations made in commercial advertising or promotion").

Davidson's fifth counterclaim under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 ("ICFA"), must also meet the pleading requirements of Rule 9(b). *See Merix Pharm.*, 2006 WL 1843370, at *2; *Scott v. GlaxoSmithKline Consumer Healthcare, L.P.*, No. 05-C-3004, 2006 WL 952032, at *3 (N.D. Ill. Apr. 12, 2006).

Rule 9(b) requires Davidson to plead all the circumstances of the fraud in detail. This includes "the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). These heightened pleading requirements "force the plaintiff to do more than the usual investigation before filing his complaint." *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999). This ensures that the claim is "responsible and supported, rather than defamatory and extortionate." *Id.* In sum, Counterclaims III and IV are subject to the heightened pleading requirements of Rule 9(b) and will be analyzed accordingly.

  E.  *Counterclaim III: Lanham Act*

Davidson alleges that COE has made false and misleading statements to his current and prospective customers in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B). To state a claim under § 43(a)(1)(B), the false or deceptive advertising section of the Lanham Act § 43(a), Davidson must prove:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a loss of goodwill associated with its products.

*Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999) (*citing B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967, 971 (7th Cir. 1999)).

Davidson fails to properly plead his Lanham Act claim because the Letters do not constitute "commercial advertising or promotion." To be actionable under § 43(a)(1)(B), the alleged false claims must have arisen in the context of "commercial advertising or promotion." 15 U.S.C. § 1125(a)(1)(B). The Seventh Circuit has explicitly stated that "letters sent to customers do not come within the scope of § 43(a)(1)(B) – which is limited to false or misleading 'commercial advertising or promotion' and does not cover all deceitful business practices." *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 316 F.3d 731, 733 (7th Cir. 2003).[6]

Seventh Circuit law is clear: consumer letters do not constitute false or misleading commercial advertising or promotion. Davidson's failure to overcome this first prong is fatal to his Lanham Act claim. COE's motion to dismiss Counterclaim III is therefore granted.

  F.  *Counterclaim IV: Illinois Uniform Deceptive Trade Practice Act*

In Counterclaim IV, Davidson argues that the Letters violated the Illinois Uniform Deceptive Trade Practices Act ("UDTPA"). Davidson alleges violations of subsections 510/2(a)(8) and (12), which state, in pertinent part:

> A person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, the person: (8) disparages the goods, services, or business of another by false or misleading representation of fact; [or] (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding.

---

[6]The *ISI* court explicitly held that the cease and desist letters at issue there could not form the basis for a Lanham Act claim. Davidson cites several cases in arguing that the Letters are "commercial advertising or promotion." These decisions, however, are either out-of-circuit (and therefore not controlling), or a district court ruling issued prior to *ISI*.

815 ILCS § 510/2(a)(8), (12). Illinois state courts have held that, in effect, the UDTPA codified the common law tort of commercial disparagement. *Crinkley v. Dow Jones & Co.*, 385 N.E.2d 714, 719 (Ill. App. Ct. 1978).

To state a claim under the UDTPA alleging commercial disparagement, Davidson must allege that the Letters "disparage[d] . . . the quality of [his] goods or services." *Allcare, Inc. v. Bork*, 531 N.E.2d 1033, 1037 (Ill. App. Ct. 1988); *see also Brown & Williamson Tobacco Corp. v. Jacobson*, 713 F.2d 262, 274 (7th Cir. 1983) (holding that the plaintiff did not have a UDTPA claim because the defendant merely attacked the plaintiffs' policy choices, and did not disparage the plaintiffs' product); *accord Republic Tobacco, L.P. v. N. Atl. Trading Co.*, 254 F.Supp.2d 985, 998 (N.D. Ill. 2002); *Richard Wolf Medical Instruments v. Dory*, 723 F. Supp. 37, 40-41 (N.D. Ill. 1989). Here, the Letters involve only a general statement that Davidson does not have a license or authorization to use the patented system. COE further states that a patent infringement suit is pending against Davidson. The Letters do not make disparaging statements regarding the quality of Davidson's business. As such, Davidson has failed to state a claim under the UDTPA. COE's motion to dismiss Counterclaim IV is granted.

  G.  *Counterclaim V: Illinois Consumer Fraud and Deceptive Business Practices Act*

To state a claim under the Illinois Consumer Fraud and Deceptive Business Practice Act, 815 ILCS 505/2 (West 1994) ("Illinois Consumer Fraud Act" or "CFDBPA"), Davidson must allege: (1) a deceptive act or practice by COE; (2) COE's intent that Davidson rely on the deception; and (3) that the deception occurred in the course of conduct involving trade and commerce. *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593 (Ill. 1996).[7]

---

[7] As I noted above, an allegation of consumer fraud is subject to the heightened pleading requirements of Rule 9(b). *Connick*, 675 N.E.2d at 593; *Merix Pharm.*, 2006 WL 1843370, at *2.

COE initially asserts that CFDBPA claims can only be brought by consumers. *See Allcare,* 531 N.E.2d at 1039 (holding that the Consumer Fraud Act "was intended to provide redress only to consumers generally, not to businesses injured by other businesses where they are not consumers of each other's goods or services"). However, the CFDBPA does give "businessmen standing to sue under the Consumer Fraud Act to redress competitive injury when they suffer when other businessmen deceive customers." *Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.*, 546 N.E.2d 33, 40 (Ill. App. Ct. 1989). Thus, businessmen may sue under the CFDBPA when they allege that "the conduct involves trade practices directed to the market generally or otherwise implicates consumer protection concerns." *Am. Broad. Co. v. Maljack Prods., Inc.*, 34 F. Supp. 2d 665, 680 (N.D. Ill. 1998) (*citing Athey Prods. Corp. v. Harris Bank Roselle*, 89 F.3d 430, 436-37 (7th Cir. 1996)). Indeed, as recently as 2004, this district has recognized a business's standing in maintaining a cause of action under the CFDBPA, subject to the caveat that the "alleged conduct involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns." *Am. Hardware Mfrs. Ass'n v. Reed Elsevier, Inc.*, No. 03-C-9421, 2004 WL 3363844 (N.D. Ill 2004) (*quoting Downers Grove*, 546 N.E.2d at 40).

COE next contends that Davidson has not established the nexus between the Letters and consumer issues, as they are not directed "to the market generally and do not otherwise implicate consumer protection concerns." A relatively recent application of the nexus standard (in a case cited by Davidson) appears in *Gold v. Golden G.T., LLC*, No. 05-C-288, 2005 WL 2465815, at *4 (N.D. Ill. Oct. 4, 2005). There, the court takes strides to broadly construe the nexus requirement. The court advises that "the plaintiff may satisfy this requirement if [the misrepresentations] are directed to 'consumers,' as opposed to simply 'customers' of the business

10

plaintiff." *Id.* It further cites *Pain Prevention Lab, Inc. v. Elec. Waveform Labs, Inc.*, 657 F. Supp. 1486, 1493 (N.D. Ill. 1987) for the proposition that a plaintiff may establish the nexus if it alleges that the misrepresentations were made "in the marketplace and to actual and/or prospective customers." *Gold*, 2005 WL 2465815, at *4 (quotation marks omitted). Finally, the court states that "a business plaintiff can successfully plead a consumer nexus by alleging the defendant's actions implicate consumer protection concerns." *Id.*

Davidson fails to plead the required nexus properly, especially when one takes into account the heightened pleading requirements of Rule 9(b). Davidson does state that the statements were made to his "customers and prospective customers" and that the acts "occurred in the course of trade or intrastate and interstate commerce." Nevertheless, Davidson fails to allege that the Letters were directed to consumers or the the marketplace generally, or that consumer protection concerns are implicated. Furthermore, COE only sent out seven letters, and only to Davidson's customers. Quite simply, this type of focused communication fails to implicate the kind of consumer protection concerns required to state a claim under the CFDBPA. Thus, Davidson has failed to allege the necessary nexus between COE's conduct and consumer protection concerns. Because Davidson has failed to make this initial showing, I need not address the remaining elements. COE's motion to dismiss Counterclaim V is granted.

   H.  *Counterclaim VI: Tortious Interference with Prospective Economic Advantage*

Finally, Davidson claims that COE tortiously interfered with his prospective economic advantage. To state such a claim, Davidson must plead: (1) his reasonable expectation of entering into a valid business relationship; (2) COE's knowledge of his expectancy; (3) purposeful interference by COE that prevents Davidson's legitimate expectancy from ripening into a valid business relationship; and (4) damages to Davidson resulting from such interference.

11

*Fellhauer v. City of Geneva*, 568 N.E.2d 870, 878 (Ill. 1991).  COE argues that Davidson failed to establish the first element of the claim, as there were no third parties who actually contemplated a business relationship with him.

I assess this claim under the notice pleading provisions of Fed. R. Civ. P. 8(a).  *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998).  Under those lax standards, this counterclaim sufficiently pleads the elements of this claim.  Davidson states that he "had a reasonable expectation of . . . entering into valid business relationships" with those contacted by COE.  In support of the reasons for this expectancy, Davidson argues that his "outstanding interstate reputation" among individuals in the "professional and non-professional baseball" programs leads him to believe that he was to continue his work with these individuals.  The reason for the interruption, Davidson claims, was the Letters.  All Davidson has to allege is "a reasonable expectancy to enter into future business relations."  *Labor Ready, Inc. v. Williams Staffing, LLC*, 149 F. Supp. 2d 398, 410 (N.D. Ill. 2001).  Davidson has alleged as much and thus meets the first element.

As for the remaining elements, Davidson alleges the relevant facts necessary to support his claims.  First, he alleges that COE was aware of his expectation of entering into business relationships and was aware of his "outstanding interstate reputation."  In support of the third element, Davidson pleads that COE "intentionally and unjustifiedly [sic] interfered" with the valid business relationships and his expectancy of fulfilling them.  Finally, Davidson alleges that he suffered damages as a result of the interference.  Although Davidson has not stated which particular damages he suffered, he is not required to do so under the minimal pleading requirements of Rule 8(a).

Davidson properly alleged that COE knew that he had a reasonable expectation of entering into valid business relationships, with which it purposefully interfered, causing damage to Davidson. Davidson has thus stated a claim for tortious interference with prospective economic advantage. COE's motion to dismiss the portion of Counterclaim VI pertaining to prospective economic advantage is denied.

IV. CONCLUSION

COE's motion to dismiss Counterclaims III, IV, and V is granted. COE's motion to dismiss the remaining portion of Counterclaim VI is denied.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: October 17, 2006